DANIEL RIX, Administrator of JACOB SMITH, *vs.* Heirs of
JACOB SMITH.

*Dubitater*, whether on the death of one joint administrator the other is not authorized to proceed in the administration without any decree from the court of probate.

No legal présumption arises from lapse of time, that a debt or claim has been abandoned.

Lapse of time is a fact from which payment may be presumed.

No presumption will be made by a court, that a claim which has not been asserted for thirteen years has been paid, when from other facts the delay can be accounted for, and when there was no one who would probably have made the payment.

This was an appeal from the probate court for the district of Hartford, on a decree deciding that the administration of L. Mills, the former joint administrator with said Rix on the estate of Jacob Smith, cease, said Mills being dead, and that said Rix proceed as the sole administrator.   The object of Rix, the plaintiff, and the objections to the decree made by the court of probate, are fully stated in the opinion of the court.

*Mr. Hubbard for the appellee.*

*Collamer and Marsh for the appellants.*—1. The object of this proceeding on the part of the administrator is, to enable

WINDSOR,
February,
1833.

Administrator
of Smith
vs.
Heirs of Smith.

him to make sale of real estate, to pay him the amount found due on the settlement of 1820. This question, it is presumed, is to be settled by such general principles as are to be considered law, not merely for this but for all cases.

The heirs object to any proceeding to open this administration for such a purpose and after so great a lapse of time; first, because the safety of administrators requires no such course. They have all necessary security in the pursuit and discharge of their duty by the ordinary time given by statute, and the power given the probate court to decree a proceeding by one of two or more joint administrators was never intended to give additional time. There is already, by the ordinary operation of law, sufficient delay in the settlement of estates, without the courts adding further time in the exercise of constructive power.

2. It is insisted, that where the statute gives to the probate court power, in all cases where real estate is to be sold, to grant an extension of time to make sale and pay debts, (which was done in this estate) it is to be taken as exclusive of further power of extension in any way; whereas, by the course now attempted, the time of making sales may be indefinitely postponed.

3. It is the clear policy of our law on the subject of lands and conveyances, that all claims and liens on lands should appear on record, and be shown by deed or registry, and, unaccompanied by possession, should be utterly discountenanced. But if an administrator can permit a claim in his favor to sleep ten or fifteen years, and then our courts yield him assistance to revive and enforce it, by sale of lands formerly belonging to the estate; then our law on the subject of liens and lands is most clearly invaded, and its integrity destroyed. The introduction of such a principle will require a whole department of law to be built up to sustain it. Shall he sell any of the land which once constituted a part of the estate, though now in the hands of purchasers? If so, Rix is holden by the farm he has purchased of the guardian; and his deed, made in the usual form, contains no covenant against such incumbrance. If he cannot sell what has passed to purchasers, then two thirds of the land of this deceased are exempt from the claim, as the husbands of the heirs have acquired it by marriage, which in law is *purchase*. Or can he merely sell that part which yet remains in an heir? And if so, what shall be the redress of that heir against others,

WINDSOR,
February,
1833.

Administrator
of Smith
vs.
Heirs of Smith.

who perhaps have sold, or are gone out of the country, or are insolvent, and the others by no vigilance or prudence were clothed with legal power for security ? The subject is replete with difficulty, the moment the court extend, by favor, the regular statutory time of administration, especially beyond the time of the administrator giving up possession to the heirs.

4. To avoid consequences so injurious, every presumption should be made against state claims of this character, especially when addressed to legal discretion. The statute of limitation on record debts is eight years. This claim lay twelve years without excuse, and therefore in analogy with the statute should be barred. This may be done by presuming it paid to Mills, which presumption is in no way rebutted. Or it may be presumed the same was at the time closed and abandoned. This last presumption is rendered satisfactory as *true*, from the consideration not merely of the lapse of time, but also from its being said at the time no more would be done. The administrators returned their order of sale into court, which has there remained. The heirs have had the whole possession and control of the property ever since, and Rix has purchased of their guardian, and made payment from time to time since.

5. Should there be, after all this time, an opening of the administration for the benefit of administrator, while at the same time the creditors and others interested would long since be barred by statute of claims against him ? And shall this be done on the responsibility of the joint bond, so long after the co-administrator's decease ?

6. It is to be recollected this administrator is pursuing his own benefit—said Mills or his estate are claiming nothing. Now from an examination of the several accounts of said Mills and Rix in the probate files, it appears that Mills kept his account not merely for settlement with the probate office, but also with his co-administrator. He resided at Windsor, some thirty miles from the estate, and therefore entered not only all he paid out, but all he received from rents, lands sold, debts collected, but also all he received of the personal property which was inventoried. Now if by this account, as allowed, we add all he paid out for his personal services as charged, and deduct therefrom all he received in any way, it will be apparent, even if Rix be allowed for paying all the other debts and charges, that the sum of \$319 68 of the balance found in January, 1820, belonged to Mills; and therefore Rix, to whose benefit

the $200 debt of the society was abandoned, has received more than could have been his due.

WINDSOR,
February,
1833.

Administrator
of Smith
vs.
Heirs of Smith.

The opinion of the court was pronounced by

WILLIAMS, J.—This is an appeal from a decree of the court of probate for the district of Hartford, made in December last. It appears that on the 28th day of October, 1814, administration on the estate of Mr. Smith was granted jointly to Mr. Rix and Luther Mills.—That the estate was represented insolvent, and commissioners appointed in the usual manner. On the 5th of January, 1820, the administrators rendered their account, which was examined and allowed by the court of probate. In this account they were charged with the amount of the inventory and sums received from the sales of real estate, &c. to the amount of $10,641 77, and were credited for moneys laid out, and also for the claims allowed against the estate, amounting in all to $10,974 35, leaving a balance due to the administrators of $333 58. From the affidavit of Mr. Collamer, it appears that at this time Mr. Mills, one of the administrators, said he should sell no more lands, and that nothing further would be done, or words to that effect; and that an order which had been obtained for the sale of real estate, was then returned to the court of probate. In the February following, Mr. Collamer was appointed guardian of the children, took possession of the real estate as guardian, and in February, 1821, obtained an order from the supreme court to sell the real estate of his wards, and sold the same to Mr. Rix, taking notes payable at a subsequent period. In 1829 or '30, Mr. Collamer settled his guardianship, and gave up the notes which he had received of Mr. Rix, and which remained uncollected to his wards, who were then of age.

It further appears, that among the claims against the estate of Mr. Smith, for which the administrators were credited in their account as to be thereafter paid by them, was one of two hundred dollars, allowed to the Congregational society of Royalton, which has since been dissolved, and that sum never paid. That sum is therefore in the hands of the administrators to be accounted for, if it is not already accounted for. Mr. Mills, one of the administrators, has deceased; and at a probate court, holden on the 5th day of December, 1832, the court decreed, on the application of Mr. Rix, that the power of Mr. Mills, as administrator, should cease, and that Mr. Rix should proceed to ad-

WINDSOR,
February,
1833.

Administrator
of Smith
vs.
Heirs of Smith.

minister alone. From this decree the appeal is taken, and the question now to be determined is, whether it shall be affirmed or reversed.

The object of Mr. Rix is undoubtedly to take some measures to realize the balance which was found due to the administrators when their account was settled. It is so considered by the heirs, who are appellants, and is avowed by his counsel.

We are strongly inclined to the opinion, that there was no necessity for any such decree—that by the statute, sec. 37 of the probate act, Mr. Rix was authorized to proceed alone in the administration, after the death of his co-administrator, without any decree of the court of probate for that purpose. But as the parties have not presented that question, but have litigated upon altogether different grounds, as there may possibly be some doubts, and as a reversal of the decree on that ground might produce further litigation and expense to no good purpose, we are not inclined to reverse the decree for this cause, but have considered the questions which the parties have presented as the ones to be decided, to wit, that such a decree is necessary to enable the surviving administrator to proceed in the administration. This application has been resisted on the ground that from the lapse of time it is to be presumed that the claim now set up by him has been satisfied or abandoned entirely. That a principal part of the balance found due to the administrators was due to Mr. Mills, the other administrator, and from his declaration, as testified to by Mr. Collamer, as well as from his asserting no claim in his life-time, this presumption is fortified, and therefore the administration ought not to be revived to enable Mr. Rix to collect that balance.

Upon the subject of presumption of payment, it may be observed, that lapse of time, even in cases where the statute of limitation applies as well as in cases where it does not, is a fact from which a court or jury may infer a payment, but it is only a fact to be considered with the other facts in evidence, and may afford very strong or very slight evidence of payment, or be so effectually explained as to be no evidence of that fact at all. There are certainly some circumstances in this case which tend to resist this presumption of payment. The account rendered in January, 1820, was unquestionably intended to be a full account of the administration. The real estate passed immediately into the hands of the heirs which, which probably left no funds or means in the hands of the administrators to raise the

sum due to them. There was then no one to pay this balance. The administrators being, as it is represented, on very friendly terms with Mr. Smith in his life-time, and with his family, were probably unwilling to sell the real estate at a sacrifice to pay themselves, and they may have preferred to stand as creditors to the heirs when they came of age, not doubting that they would cheerfully pay the same if they were fortunate, and did not exhaust all their means in their infancy. At any rate, as a fact, we cannot believe that this sum has been paid, as there was no one to pay it. As to the claim being abandoned, we know of no legal ground to make a presumption of that kind. The abandonment of a legal claim or a demand or debt is never presumed, though it may be presumed to have been paid. A direct assertion of the administrators that they would give up or abandon a claim for a sum legally ascertained to be due to them, founded on no consideration, would not prevent their enforcing the same, if they should alter their determination, and were disposed to collect it; neither can a legal presumption ever arise that they have so abandoned it as to bar their claim entirely. The representatives of Mr. Mills are not immediate parties to this proceeding. If Mr. Rix should find any means to collect the balance due to the administrators, which appears to be but about one hundred and thirty dollars, after crediting the two hundred dollars which was not paid to the Congregational society in Royalton, he must settle and adjust the claims between him and the representatives of Mr. Mills. If either the heirs or administrators of Mills should ever wish to investigate this business, and assert their claim to the sum found due to the administrators, they can only do it in the name of the surviving administrator; and if they should claim this sum from the estate of Mr. Smith, they might urge that the death of Mr. Mills prevented his collecting the same, and that his death is of itself a sufficient reason why no such presumption of payment as the appellants here claim should be made. We are therefore inclined to think that this is not a case in which we should be justified in applying the doctrine of presumptions so as to deny the application of the surviving administrator. If it could be proper in any similar case, it would be only in a case where the conclusion was irresistible that the estate had been fully administered—that no further account remained to be rendered, and that nothing was due to any one which required that there

should be an administrator. The question is not before us, nor are we required to decide what course the surviving administrator is to pursue, whether he can sell the estate which has passed into the hands of purchasers, or what measures he can take to enforce his claim, if he has any. All that we determine is, that the administrator shall be authorised to proceed in administering upon the estate of Mr. Smith, the same as he and Mr. Mills could do, were Mills now alive. If it is true that the order of sale which the administrators received was returned to the court of probate, it may and probably will be necessary for the administrator to render a further account, make a further settlement, and obtain another order to sell real estate, if there is no personal estate unadministered. On rendering this account, and making such an application, it will be in the power of the heirs to offer such evidence to the court of probate, arising from lapse of time, or from any other source, as will convince the court of probate nothing is due to any one from the estate, and that no such licence is necessary ; and it will be for the administrator to offer such considerations to the court of probate as he may thine proper, to convince them of the propriety of granting such licence.

The decree of the court of probate must therefore be affirmed.